**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

POWERSCHOOL HOLDINGS, INC.,

    Plaintiff,

    -against-

                    Misc. Case No.:

LISA CLINE,

    Defendant.

<u>**POWERSCHOOL HOLDINGS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**ITS MOTION TO COMPEL COMPLIANCE WITH THIRD PARTY SUBPOENA**</u>

Pursuant to Rules 37 and 45 of the Federal Rules of Civil Procedure and the Local Rules of this Court, Defendant PowerSchool Holdings, Inc. ("PowerSchool") submits this memorandum in support of its Motion to Compel Compliance with Third Party Subpoena duces tecum served on Lisa Cline on January 31, 2025 (the "Subpoena"), in connection with litigation arising out of the Northern District of California.

## I.    INTRODUCTION

This is a motion to enforce a subpoena duces tecum against Lisa Cline, a third-party advocate for a technology-free classroom, who leads the Student Data Privacy Project ("SDPP") organization alongside Emily Cherkin, a Named Plaintiff[1] in the underlying putative class action litigation, *Cherkin, et al. v. PowerSchool Holdings, Inc.*, Case No. 3:24-02706-JD (N.D. Cal.) ("*Cherkin*"), pending before Judge Donato in the Northern District of California.

The *Cherkin* lawsuit arises out of various privacy-related claims against PowerSchool, a leading provider of education software. Named Plaintiff Emily Cherkin—an outspoken anti-technology advocate who brings claims on behalf of herself and her minor child—leads the SDPP organization alongside Andrew Liddell, Lisa Cline, and Joel Schwarz. SDPP lobbies against the use of technology in schools on privacy grounds (in part). As particularly relevant here, SDPP has referenced PowerSchool by name[2] as part of its advocacy and lobbying efforts to Congress. It has

---

[1]    "Plaintiff(s)" as referred to in this Motion and Subpoena refer to Named Plaintiffs in the underlying action, *Cherkin, et al. v. PowerSchool Holdings, Inc.*, Case No. 3:24-02706-JD (N.D. Cal.).

[2]    *See*    https://www.studentdataprivacyproject.com/recommendationsforcongress    ("For Example, PowerSchool is the engine behind many school information systems and the college prep platform Naviance. According to the Markup (Jan. 11, 2022) the company holds data on more than 75% of North American K-12 students. Notably, Naviance, PowerSchool, and a host of other EdTech platforms are all owned by the private equity firm Vista Equity Partners, which has built 'an educational software empire that wields unseen influence over the educational journeys of tens of millions of children.' Even more alarming, when Combined,

also filed a complaint with the Department of Education concerning privacy and schools' use of education technology,[3] and has published statements adopted in the *Cherkin* Complaint. The members of SDPP are thus in possession of information highly relevant to the *Cherkin* action that speaks directly to the claims at issue and PowerSchool's defenses.

*First*, the documents this Subpoena seeks will provide evidence of what Ms. Cherkin knew or should have known outside of the relevant statutes of limitations and will support the argument that Named Plaintiffs were aware of PowerSchool's data practices from an early date. *Second*, these documents will demonstrate that Ms. Cherkin's motivation in the class action litigation, as with SDPP's advocacy, is to end the "EdTech" industry and create a technology-free classroom. This makes her atypical of—and antagonistic to—the rest of the putative class who likely do not share SDPP and Ms. Cherkin's activist goal of a technology-free classroom. *Third*, these documents will elucidate Ms. Cherkin's expectation of privacy, an issue central to this litigation that goes to her fitness to serve as class representative, the appropriateness of class treatment in this case, and PowerSchool's defense more generally. SDPP's raison d'être is based on the notion that federal law has set up a system—under which PowerSchool operates—that does not sufficiently value student data privacy;[4] PowerSchool is entitled to seek discovery that will test Ms. Cherkin's alleged privacy expectations, as compared to the SDPP's acknowledgement that

---

these datasets 'fuel a suite of predictive analytics products that push the boundaries of technology's role in education, and in some cases, raise discrimination concerns.'").

[3]     *See* Lisa Cline, *Parents Nationwide File Complaints with U.S. Dept. Of Education; Seek to Address Massive Student Data Privacy Protection Failures*, The Sentinel (Jul. 12, 2021), https://www.thesentinel.com/communities/parents-nationwide-file-complaints-with-u-s-dept-of-education-seek-to-address-massive-student/article_3133b6ce-e30e-11eb-9a6f-4b21a35875b0.html.

[4]     *See* https://www.studentdataprivacyproject.com/whoweare ("It is time to highlight the shortcomings of FERPA in protecting student privacy.").

3

federal law authorizes certain data sharing.

To pursue its defense, on January 31, 2025, PowerSchool issued a Subpoena to Ms. Cline, which was narrowly tailored to obtain relevant documents not obtainable from a party to the *Cherkin* litigation. To date, despite PowerSchool's numerous attempts to obtain compliance and obviate the need for court intervention, Ms. Cline has failed to comply or to serve timely, proper objections. Ms. Cline did not even acknowledge the Subpoena until ***thirteen days*** after the deadline to respond, and the two responses received after the deadline have both been insufficient under the Federal Rules.

Ms. Cline cannot, consistent with the obligations imposed by Federal Rule of Civil Procedure 45, continue to ignore her obligation to properly respond to the Subpoena and produce responsive documents. Accordingly, PowerSchool respectfully requests that Lisa Cline be compelled to fully comply with the Subpoena.

## II.    BACKGROUND

PowerSchool is a leading provider of education software offering a wide range of products that enables schools to effectively maintain school records, obtain information from students and parents, convey information to students and parents, analyze their own records, securely store their data in a digital cloud, and more. Plaintiffs, including Emily Cherkin, bring a slew of privacy-related claims against PowerSchool based on wholly inaccurate allegations regarding what PowerSchool does and how it makes money. Ms. Cline's and Ms. Cherkin's advocacy efforts similarly (and again, wrongly) allege that PowerSchool functions like a modern social media or "BigTech" company, incentivizing students to spend more time on its products to collect and sell

information.[5]  It does not.  PowerSchool sells software licenses to schools and school districts and functions as a data processor operating at the strict direction of its customer schools and school districts to perform a variety of functions like tracking attendance.

Nonetheless, Named Plaintiff Emily Cherkin, taking on the moniker of "The Screentime Consultant," along with third parties Lisa Cline, Joel Schwarz, and Andrew Liddell, formed SDPP to lobby against the use of third-party software vendors by schools and school districts, advancing a utopian view of a screenless classroom.  When these lobbying efforts failed, SDPP has turned to the courts, filing cases like *Cherkin*, where Andrew Liddell serves as co-counsel, as well as three more recent class actions filed against similar companies with nearly identical claims, one of which was brought by Joel Schwarz as a named plaintiff.[6]

In order to effectively mount its defense, including that the Named Plaintiffs in *Cherkin* are advocates with atypical views and expectations of privacy and that Ms. Cherkin's claims are time barred under the applicable statutes of limitations, PowerSchool informed Plaintiffs in *Cherkin* that it would serve third party subpoenas on Ms. Cherkin's business, the Screentime Consultant, and the other leaders of SDPP, Mr. Liddell, Ms. Cline, and Mr. Schwarz.  *See* Temchenko Decl.  Counsel for PowerSchool previewed the Subpoenas with Plaintiffs' counsel, who informed PowerSchool they would be representing Ms. Cline and agreed to accept service on

---

[5]  *See* Emily Cherkin (@thescreentimeconsultant), INSTAGRAM, https://www.instagram.com/thescreentimeconsultant/ ("business model of EdTech is the business model of Big Tech: both rely on users spending 'time on device' to generate profits.").

[6]  *See Hernandez-Silva et al v. Instructure, Inc.*, Case No. 2:25-cv-02711-SB-MAA (C.D. Cal.); *Schwarz et al v. Google LLC*, Case No. 3:25-cv-03125-JCS (N.D. Cal.); *Shanahan et al v. IXL Learning, Inc.*, Case No. 3:24-cv-02724-RFL (N.D. Cal.).

her behalf on January 28, 2025. *See* Temchenko Decl.; Ex. 2 (2025-1-28 Email from L. Aragon).[7]

The Subpoena notes eight requests for production:

- "Without regard to the Relevant Time Period, Documents and communications concerning the Student Data Privacy Project, https://www.studentdataprivacyproject.com/."

- "Without regard to the Relevant Time Period, Documents and communications concerning any partnership, advocacy group, business entity, or other organization (formal or informal) between You and any Plaintiff concerning data privacy other than the Student Data Privacy Project, https://www.studentdataprivacyproject.com/."

- "Without regard to the Relevant Time Period, Documents and communications concerning any Plaintiff."

- "Without regard to the Relevant Time Period, Documents and communications concerning any EdTech Company."

- "Without regard to the Relevant Time Period, Documents and communications among or between You and Plaintiffs' counsel."

- "Documents and Communications concerning FERPA or any Student Education Record Law."

- "Complaints You revised, edited, or submitted to any regulatory, legislative, administrative, educational or other governmental body under FERPA or any Student Education Record Law."

---

[7]     In the spirit of compromise, PowerSchool agreed to hold Mr. Liddell's Subpoena, reserving its rights, as a courtesy despite his personal involvement in Ms. Cherkin's advocacy, which relates to PowerSchool's defense. *See* Temchenko Decl.; (2025-1-31 Email from E. Levinton).

- "Documents and Communications with any regulatory, legislative, administrative, educational, or other governmental body concerning student data privacy."

From the beginning, PowerSchool has made clear, including during meet and confers on March 25, 2025, April 2, 2025, and April 23, 2025 that it does not seek duplicative discovery but instead seeks to obtain documents directly relevant to its defenses that it cannot get from other sources.[8]

Despite this and other good faith attempts at cooperation, and despite *three separate attempts* to obtain compliance, Ms. Cline failed to comply and serve timely, proper objections to the Subpoena. Ms. Cline did not respond to the Subpoena in any way until *13 days* after the deadline—and only after PowerSchool followed up. And her hastily written, untimely response (the "March 13 Letter") purported to object to both the Cline and Schwarz Subpoenas in a single paragraph, recited below. *See* Temchenko Decl.; Ex. 5 (2025-3-13 Letter from L. Aragon).

> The clients object to each request for production directed to Lisa Cline and Joel Schwarz as seeking information irrelevant to any claim or defense at issue in this case. The burden and expense of responding to these requests outweighs its likely benefit, of which there is none. The subpoenas are plainly designed to harass and intimate [*sic*] Ms. Cline and Mr. Schwarz for their advocacy in favor of students' privacy rights, for which your client shows little regard.

*Id.* After PowerSchool objected to such offhand refusal, Ms. Cline sent a second response (the "R&Os") containing similarly vague, improper objections that likewise lack the level of specificity required by well settled case law, and repeats the same, boilerplate objections as to each request, recited below. *See* Temchenko Decl.; Ex. 6 (2025-4-1 Resps. & Objs. to PowerSchool RFPs).

---

[8]    In furtherance of this, since Plaintiffs' counsel expressed at the March 25, 2025 meet and confer that the relevant documents would be produced by Emily Cherkin in her individual capacity, PowerSchool also agreed to not move to compel compliance with the Screentime Consultant Subpoena at that time. *See* Temchenko Decl.

- "Ms. Cline objects because most, if not all, the documents requested are not related to a claim or defense in this case and are therefore irrelevant."

- "Ms. Cline further objects because any relevant or discoverable documents that may exist—and Ms. Cline is not stating that any such documents exist—would also be in the possession, custody, or control of a party to this case."

- "Ms. Cline also objects because the request is unduly burdensome, expensive, and not proportional to the needs of the case because (1) there is no temporal limitation, and (2) it seeks documents that are available to Defendant by other means."

- "Ms. Cline also objects because the request is designed to harass, intimidate, and harm Ms. Cline and those she associates with, such as Emily Cherkin."

- "Last, Ms. Cline objects to the extent the Request seeks document [*sic*] protected by a privilege, such as the attorney client privilege."

*Id.* The R&Os also misleadingly assert that Ms. Cline "has nothing to produce." *See* Temchenko Decl.; Ex. 6 (2025-4-1 Resps. & Objs. to PowerSchool RFPs). Because this response strains credulity—*i.e.*, it is difficult if not impossible to imagine that the founders and leaders of the SDPP would have *zero* documents about that project, their lobbying efforts, or other responsive documents—PowerSchool questioned that representation during meet-and-confers. As it turns out, PowerSchool was right to question: through the parties' meet and confers on March 25, 2025 and April 2, 2025, PowerSchool learned that counsel for Ms. Cline failed to collect or even meaningfully investigate what documents, if any, respondents have that are responsive to the Subpoenas. *See* Temchenko Decl.

Finally, on April 14, 2025, PowerSchool served a deficiency letter (the "Deficiency Letter") on counsel for Ms. Cline outlining—again—her failure to timely and properly respond to

the Subpoenas and suggesting parameters for Ms. Cline to engage in an inquiry into what responsive documents she has. *See* Temchenko Decl.; Ex. 7 (2025-4-14 Letter from E. Levinton at 3). Importantly, in an effort to further narrow the scope of the response, these parameters were carefully designed to *exclude* any documents in the possession, custody, or control of a Named Plaintiff in the *Cherkin* litigation. This letter contained a response deadline of April 21, 2025. *Id.* However, Ms. Cline once again ignored her opportunity to engage with PowerSchool to avoid unnecessary court intervention.

Accordingly, and for the reasons explained below, the Court should compel Ms. Cline to fully comply with the Subpoena.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 45 allows a party to serve a subpoena that commands any person to produce designated documents. *See* Fed. R. Civ. P. 45. "Discovery obtained from a nonparty pursuant to Rule 45 has the same scope as provided in Rule 26(b)." *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) (citations omitted). Therefore, parties are authorized to obtain through subpoena any non-privileged material "relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). Courts should compel a party to respond in full to a third-party subpoena where the information, as here, is relevant to the underlying litigation and will not cause an undue burden. *See Porter v. Pinkerton Gov't Servs., Inc.*, 304 F.R.D. 24, 27 (D.D.C. 2014) (citing *Freeman v. Seligson,* 405 F.2d 1326, 1334–35 (D.C. Cir. 1968)). When a subpoena respondent serves untimely or insufficient objections, courts are authorized to compel full compliance. *See Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C. 1998) ("The failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections."); *In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 295 (D.D.C. 2019) (finding that a third

party's "boilerplate objections . . . carr[ied] no weight" since it "failed to articulate, let alone demonstrate by affidavit or evidence, that compliance with the Subpoena would be overly burdensome or unfeasible.").

## IV.    ARGUMENT

The Court should compel Ms. Cline to immediately produce all responsive documents in her possession, custody, or control. Ms. Cline possesses information relevant to PowerSchool's defense that is properly discoverable through a third-party subpoena. However, Ms. Cline failed to acknowledge the Subpoena until nearly two weeks after the deadline and continues to refuse PowerSchool's efforts to cooperate. Thus, Ms. Cline waived all objections to the Subpoena. Notwithstanding the untimeliness of Ms. Cline's response, when she did finally respond, her responses were improperly vague and unsupported. This is insufficient and tantamount to no response at all. Because the Subpoena properly seeks discoverable information, and because Ms. Cline has waived all objections, the Court should compel her to comply fully with the Subpoena by searching for and producing responsive documents.

### A. Lisa Cline Possesses Relevant Information Discoverable Through a Third-Party Subpoena Regarding the Named Plaintiff Emily Cherkin's Ability to Serve as a Class Representative and Statute of Limitations.

The Subpoena seeks information directly relevant to PowerSchool's defense. "Federal Rule of Civil Procedure 26 provides the relevance standard for Rule 45 subpoenas." *Stati v. Republic of Kazakhstan*, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020). "This standard is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Id.* (citations omitted). And this Court has found that "[t]he liberality of the Rules applies to discovery sought from third parties." *Fed. Trade Comm'n v. Sysco Corp.*, 308 F.R.D. 19, 23 (D.D.C. 2015).

Lisa Cline leads SDPP with Named Plaintiff Emily Cherkin. SDPP is an organization that

focuses on "Ed Tech's exploitation of [] kids' personal information." Through this organization, Ms. Cline, alongside Ms. Cherkin, Mr. Liddell, and Mr. Schwarz submitted complaints and lobbied Congress against PowerSchool—calling the company out by name—and making allegations very similar to those in the underlying *Cherkin* lawsuit. SDPP is an informal association, so it does not have its own documents because it is not a business entity; rather, the subpoenaed individuals who run the group have these documents and have likely shared thoughts with or about the Plaintiffs in this case that informed the suit against PowerSchool. On top of their plain relevancy for that reason alone, the dates of these documents and communications are also directly relevant to PowerSchool's statute of limitations defense because they provide evidence of what Ms. Cherkin knew or should have known outside of the relevant statutes of limitations. Discovery into Ms. Cline's advocacy through SDPP will support the argument that the Named Plaintiffs were aware of PowerSchool's data collection practices from an early date, barring the claims under the relevant statutes of limitation. Namely, if Ms. Cline was—during or prior to 2019— aware of the alleged facts underlying the claims against PowerSchool, it is reasonable to presume that Ms. Cherkin would have known as well due to their collective participation and collaboration in SDPP.

These documents would also go to Emily Cherkin's expectation of privacy generally, a key issue in this litigation. Specifically, the mission of SDPP appears to be based on the contention that the legal regime in place improperly allows data sharing not in the interest of students; documents surrounding SDPP members' understanding of this legal regime would likely inform Ms. Cherkin's expectation of privacy during the relevant time period including whether and how it compares to the expectations of privacy of others in the putative class and by extension her fitness to serve as a class representative for the nationwide putative class alleged in the underlying *Cherkin* litigation. The variance in knowledge and expectations uncovered by Ms. Cherkin's example will further go to difficulties in demonstrating the appropriateness of class treatment of

the claims in the underlying *Cherkin* litigation.  For example, an email chain between Ms. Cline and other SDPP members opining that privacy laws do not adequately protect student data, or a draft publication advising parents to opt out of technology use in their child's classroom or warning parents that their children's online data is being surveilled, would go to SDPP's understanding and expectation of data privacy, which would, in turn, evidence Ms. Cherkin's expectations of privacy during the relevant period.

These documents would also go to Emily Cherkin's fitness to serve as class representative by demonstrating her atypical motives in bringing the underlying litigation.  Specifically, the documents will likely show that Ms. Cherkin's aim with this litigation, as with SDPP's activist mission, is to obtain overbroad injunctive relief—in other words, to end what Plaintiffs refer to as the "EdTech" industry and curtail the use of technology in schools.  Thus, Ms. Cherkin's interest in obtaining an overbroad injunction would be antagonistic to the rest of the class, many of whom understand, accept, or are not concerned with PowerSchool's processing of their data in return for the advantages provided by PowerSchool's tools or who would rather be compensated if PowerSchool were found to be liable.  For example, emails between Ms. Cline and other SDPP members about the potential of using litigation as an advocacy tool (*i.e.*, a means to obtain from a court what they failed to obtain from Congress), research into the potential impact of litigation on the "EdTech" industry, or documents concerning SDPP's mission and strategy to end the use of technology in the classroom would be highly relevant to these issues.  Because of this as well as the implications regarding the statutes of limitations and Ms. Cherkin's expectation of privacy, documents responsive to the Subpoena are directly relevant to PowerSchool and must be produced.

### B. All Objections Have Been Waived as Untimely, And All Responsive Documents Must Be Produced.

Lisa Cline waived her right to object to the Subpoena by failing to timely and adequately

respond to the Subpoena despite PowerSchool's repeated lenience. *See* Fed. R. Civ. P. 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."); *see also In re Denture Cream*, 292 F.R.D. at 124 (citing *Alexander*, 186 F.R.D. at 34) ("The failure to serve written objections to a subpoena within the time frame specified by Rule 45(c)(2)(B) typically constitutes a waiver of such objections."). Even if these responses had been timely, they are insufficient, vague, and do not preserve any objections as to specific requests.

Twelve days after the response deadline, counsel for PowerSchool contacted counsel for Ms. Cline informing them that PowerSchool had not received responses and warning them that continued noncompliance would result in PowerSchool seeking court intervention. *See* Temchenko Decl.; Ex. 4 (2025-3-12 Email from E. Levinton). The next day—***thirteen days*** after the response deadline—Ms. Cline purported to object to the Subpoena's requests with vague, cursory language. *See* Temchenko Decl.; Ex. 5 (2025-3-13 Letter from L. Aragon). When PowerSchool offered counsel *another* opportunity to provide substantive responses and objections, counsel for Ms. Cline offered up similarly inadequate boilerplate objections nineteen days later. *See* Temchenko Decl.; Ex. 6 (2025-4-1 Resps. & Objs. to PowerSchool RFPs). For reasons discussed in the next section, these untimely responses were also inadequate.

Finally, on April 14, 2025, PowerSchool served a Deficiency Letter on counsel for Ms. Cline. In addition to outlining—again—the failure to timely and adequately respond to the Subpoena, PowerSchool also suggested parameters for Ms. Cline to engage in an inquiry into what responsive documents she may have. The parameters were carefully tailored to address the vague concerns about duplicative discovery and harassment gathered from Ms. Cline inadequate objections. The letter contained a response deadline of April 21, 2025. However, Ms. Cline once again ignored her responsibility to respond. In the April 23, 2025 meet and confer, Plaintiffs'

13

counsel repeated the vague boilerplate objections and accusations of harassment, refusing to comply with the Subpoena or take proper action under the Federal Rules.

Notwithstanding the insufficiency of the purported objections, Ms. Cline has waived her right to object due to her noncompliance with the Subpoena's deadline and should be required to fully comply with all requests.

### C. In Addition to Being Untimely, Ms. Cline's Global, Boilerplate Objections are Improper.

Even if PowerSchool were to accept these responses as timely (it does not), these responses are wholly insufficient, vague, and do not preserve any objections as to specific requests. *See In re Motion to Compel Compliance*, 333 F.R.D. at 295 (finding that a third party's "boilerplate objections . . . carr[ied] no weight" since it "failed to articulate, let alone demonstrate by affidavit or evidence, that compliance with the Subpoena would be overly burdensome or unfeasible."). A subpoena respondent has the burden "to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 27 (D.D.C. 2012). Ms. Cline has failed to do so.

Ms. Cline offered two purported sets of objections, both after the deadline. First, Plaintiffs' counsel sent a two page, hastily written letter (the March 13 Letter) purporting to object to all three subpoenas. The letter contained a single paragraph purporting to object to both the Cline and Schwarz subpoenas. *See* Temchenko Decl.; Ex. 5 (2025-3-13 Letter from L. Aragon). Second, when PowerSchool raised issue with this clearly improper objection and offered counsel yet another opportunity to provide substantive responses and objections, counsel for Ms. Cline sent a second response (the R&Os) containing similarly improper responses also lacking the level of specificity required by well settled case law. The R&Os repeat the same, boilerplate objections as to each request, and provide no support for any of the objections. *See* Temchenko Decl.; Ex. 6

(2025-4-1 Resps. & Objs. to PowerSchool RFPs). Even if timely, more specificity is required to preserve objections to discovery, and boilerplate objections such as these are improper. *See Stati*, 2020 WL 3259244, at \*4 (citations omitted) ("A party resisting a subpoena on undue burden grounds cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena."); *Q Indus., Inc. v. O'Reilly Auto., Inc.*, 2023 WL 5505889, at \*6 (C.D. Cal. July 28, 2023) ("Furthermore, Test-Rite's repetition of boilerplate objections in its written responses to the Subpoena is improper and tantamount to no response at all."). In addition to being untimely and improperly vague, these objections fail on their merits for five other reasons.

*First*, Ms. Cline's relevance objection is unavailing. Both the March 13 letter and R&Os purport to object to the Subpoena based on relevance. For the reasons previously described, this fails. *See supra* section IV(A). It is well settled that the standard for relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Stati*, 2020 WL 3259244, at \*4. This standard is the same for parties and third parties alike. *See Fed. Trade Comm'n v. Sysco Corp.*, 308 F.R.D. at 23. The information sought by this Subpoena is necessary to PowerSchool's defense—it goes to the statutes of limitations, Ms. Cherkin's fitness to serve as class representative, and her expectations of privacy.

*Second*, the "duplicative" objection asserted in the R&Os fails. From the beginning, PowerSchool has made clear that the discovery it seeks through these Subpoenas is not duplicative, and it has taken affirmative steps to avoid duplicative discovery. The fact that Ms. Cherkin *may* have *some* of the same documents this Subpoena seeks does not make this Subpoena duplicative, nor is a "duplicative" objection a basis to refuse to respond wholesale. *See In re Micron Tech.*,

*Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (finding that third party subpoena was not unduly burdensome since "the information sought [was] not entirely cumulative or duplicative" and that although currently available information could establish some of what the subpoena sought, "it is not for the Government to limit Plaintiffs' case"); *see also Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*, 2025 WL 914076, at *5 (D.D.C. Mar. 26, 2025) (citations omitted) ("Moreover, that [Judgment Creditors] may obtain the same documents through party discovery is not a basis to quash the subpoena.").

Ms. Cline is likely in possession of documents that Ms. Cherkin is not—documents that span a different time period, and documents that she is not a custodian of. PowerSchool is not aware of Ms. Cherkin's preservation habits or whether she routinely destroyed emails or other documents prior to being involved in the *Cherkin* litigation; Ms. Cline could easily have relevant emails and documents that Ms. Cherkin once possessed but no longer does. *See Klayman v. Jud. Watch, Inc.*, 2008 WL 11394172, at *9 (D.D.C. Apr. 2, 2008) ("[a respondent] may not relieve himself of his obligation to respond to document requests by stating that the information sought is already in Defendants' possession if he also possesses those documents."). Further, if Ms. Cline sent emails or drafted documents in the course of her leadership of SDPP, and these communications or documents show knowledge of PowerSchool's practices alleged in the complaint, even if Ms. Cherkin is not on that communication or document, it would be relevant since it would give rise to inferences about what knowledge Ms. Cherkin knew or should have known outside of the relevant statutes of limitations, among other issues.

Moreover, PowerSchool has taken multiple steps to avoid duplicative discovery. After meeting with Plaintiffs' counsel on April 2, 2025, PowerSchool chose not to move to compel compliance with the Screentime Consultant Subpoena, although it reserves the right to do so, since Plaintiffs' counsel explained that responsive documents will likely be produced by Emily Cherkin

in her individual capacity. Similarly, PowerSchool has repeatedly explained to Plaintiffs' counsel its aims with these Subpoenas and offered to discuss any good faith, specific objections or concerns, even developing and offering its own parameters for searches to Ms. Cline that would prevent any obvious overlap with party discovery. Specifically, PowerSchool proposed two conditions intended to address this perceived issue. First, PowerSchool proposed excluding emails that include Emily Cherkin in the to/from/cc/bcc fields. *See* Ex. 7 (2025-4-14 Letter from E. Levinton at 3). Second, PowerSchool proposed the condition that "MD5 Hash (or equivalent) is not identical to a document for which any Plaintiff is a custodian." *See id.* However, Ms. Cline failed to respond or engage on this issue.

PowerSchool is entitled to inquire into SDPP's crusade against its business model, and how that informed the lawsuit and the knowledge of the Named Plaintiff. Because of this, and because of PowerSchool's numerous affirmative actions undertaken to avoid duplicative discovery, the requests are proper.

*Third*, Ms. Cline's burden objections are unavailing. Both the R&Os and March 13 Letter contain boilerplate burden objections. Both are ineffective under well settled case law. Each objection "fail[s] to articulate, let alone demonstrate by affidavit or evidence, that compliance with the subpoena would be overly burdensome or unfeasible." *In re Motion to Compel Compliance*, 333 F.R.D. at 295. Respondents, including third parties, must "demonstrate an undue burden or significant expense" to avoid compliance with a request under a subpoena. *Stati*, 2020 WL 3259244, at *8. "A party resisting a subpoena on undue burden grounds cannot rely on a mere assertion that compliance would be burdensome and onerous without showing the manner and extent of the burden and the injurious consequences of insisting upon compliance with the subpoena." *Id.* at *4 (citations omitted). Ms. Cline has made no attempt to meet this burden. The March 13 Letter contains a one-line burden objection as to the Cline Subpoena, claiming that "[t]he

burden and expense of responding to these requests outweighs its likely benefit, of which there is none." The R&Os do no more to evidence or quantify the "burden" associated with this Subpoena. The extent of the burden analysis, repeated as to each request, is a single sentence: "Ms. Cline also objects because the request is unduly burdensome, expensive, and not proportional to the needs of the case because (1) there is no temporal limitation, and (2) it seeks documents that are available to Defendant by other means." This is improper. *See In re Coan,* 2007 WL 128010, at \*5 (N.D. Cal. Jan. 12, 2007) (finding that third parties "failed to provide meaningful objections to any specific subpoena" when they "merely objected that the times, dates and locations set for the noticed depositions and production of documents [were] unreasonable and unduly burdensome."). Additionally, PowerSchool in the spirit of cooperation provided a temporal limitation in its Deficiency Letter along with proposed search terms and other conditions to further minimize any genuine burden. *See* Temchenko Decl.; Ex. 7 (2025-4-14 Letter from E. Levinton at 3). However, Ms. Cline failed to reply.

Further, Ms. Cline has not even performed the proper search to object on the basis of burden. The law obligates a subpoena recipient to conduct a reasonable search for documents. *See Alexander,* 186 F.R.D. at 38 ("[A]n individual served with a subpoena duces tecum has an obligation to conduct a reasonable search to ensure that non-privileged documents that are relevant or likely to lead to the discovery of admissible evidence are produced."); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co.*, 247 F.R.D. 198, 204 (D.D.C. 2008) ("To the extent Centinela's assertion [that it has no responsive documents] is the result of its refusal to conduct the necessary search to locate documents responsive to these requests, the Court shall order Centinela to conduct such necessary searches and produce any and all responsive documents located as a result."); *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 2021 WL 10282215, at \*18 (N.D. Cal. Sept. 19, 2021) (finding that Facebook breached its discovery obligations by "flatly refus[ing] to even

search for and review [documents] for relevance or responsiveness" when responding to the discovery requests). Through the parties' meet and confers on March 25, 2025 and April 2, 2025, PowerSchool has learned that counsel for Ms. Cline neither collected any documents from the respondent, nor meaningfully investigated what documents—if any—she has that are responsive to the Subpoena. Rather than conducting a search for potentially responsive documents, as the law requires, Ms. Cline stands on unsupported, boilerplate objections, and altogether refuses to search for responsive documents despite multiple opportunities to cure this failure. This is entirely improper.

*Fourth*, the boilerplate harassment objection, contained in both the March 13 letter and the R&Os, is similarly unavailing. As previously discussed, the purpose of this Subpoena is to obtain information necessary to PowerSchool's defense that it cannot get from another source. *See supra* section IV(A). Ms. Cline has stated no basis for this objection and has cited to no case law dictating that discovery into advocacy activities constitutes harassment. Further, she made no attempt to avail herself of legal remedies such as moving to quash or moving for a protective order. *See* Fed. R. Civ. P. 45(d)(3); *see also Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 194–95 (D.D.C. 1998) ("If plaintiffs were seeking the case files for any other purpose, such as to harass . . . the [respondents] could seek a protective order."). She simply failed to timely respond, then served a response devoid of support or detail. Further, PowerSchool has taken every action possible to ensure that these Subpoenas are not harassing. It agreed to hold Mr. Liddell's subpoena. It agreed to not enforce the Screentime Consultant subpoena. It provided specific search terms Ms. Cline could run. It allowed Named Plaintiffs' counsel in the underlying *Cherkin* litigation to discuss service options with all third parties before attempting to serve. It offered Ms. Cline multiple opportunities to respond properly with adequate objections or limitations. To date, Ms. Cline has provided no explanation for why these subpoenas are harassing outside of her *ipse dixit* assertions;

she merely contends that PowerSchool is not entitled to subpoena Ms. Cline.  This is improper.

*Fifth*, the privilege objections, raised for the first time in the R&Os, are likewise insufficient.  It is well settled that "a general claim [of] privilege . . . is an inadequate response to a discovery request."  *Klayman*, 2008 WL 11394172, at *4 (citations omitted).  Rather, under the Federal Rules, "a party that withholds otherwise discoverable information on the basis of a privilege" must "expressly make the claim [of privilege]; and [] describe the nature of the documents, communications, or tangible things not produced or disclosed" in a privilege log.  *Id;* Fed. R. Civ. P. 45(e)(2)(A) ("A person withholding subpoenaed information under a claim that it is privileged . . . must . . . describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim."); *In re Motion to Compel Compliance*, 333 F.R.D. at 296 ("Cooke's blanket claim of privilege fails to differentiate between categories and thus provides no basis for denying plaintiffs' motion to compel [] production").  PowerSchool clearly articulated this requirement in its Deficiency Letter; however, Ms. Cline never produced a privilege log, nor could she, having never even conducted an initial search of potentially responsive documents.  *See* Temchenko Decl.; Ex. 7 (2025-4-14 Letter from E. Levinton at n.2).

Based on Ms. Cline's vague and unsupported objections, it appears she is attempting to avoid review or production of documents on the basis of some unproven burden, skip over documents for requests she incorrectly deems duplicative, and ignore responsive documents she unilaterally claims are not relevant.  This is improper.  *See Klayman*, 2008 WL 11394172, at *5 (citing *Alexander*, 186 F.R.D. at 59) ("[I]t is not for [the respondent] to unilaterally decide which documents are relevant and should not be produced.").  Accordingly, PowerSchool requests that the Court compel Ms. Cline to comply with the Subpoena in full.

## V.    CONCLUSION

For the foregoing reasons, PowerSchool respectfully requests that the Court grant PowerSchool's Motion to Compel and enter an order requiring Lisa Cline to fully comply with PowerSchool's third-party Subpoena.

Dated: May 8, 2025

Respectfully submitted,

Christopher B. Leach
District of Columbia Bar No. 1005476
Olivia Adendorff, P.C. (*Pro hac vice pending*)
District of Columbia Bar No. 1718874
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue NW
Washington, D.C. 20004
Telephone: (202) 389-5000
christopher.leach@kirkland.com
olivia.adendorff@kirkland.com

Eugene Temchenko (*Pro hac vice pending*)
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, TX 75205
Telephone: (214) 972-1770
eugene.temchenko@kirkland.com

*Counsel for Plaintiff PowerSchool Holdings, Inc.*